UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:21-cv-80549-MATTHEWMAN

CARL MORGAN,

Plaintiff,

v.

ENTERPRISE LEASING COMPANY
OF FLORIDA, LLC, d/b/a ALAMO
RENT A CAR,

Defendant.

_____/

**FILED BY** _____KJZ_____ **D.C.**

**Oct 8, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## OPINION AND ORDER

This cause is before the Court upon Defendant's Partial Motion to Dismiss the Amended

Complaint ("Motion") [DE 33]. The Motion is fully briefed and ripe for review. The Court has

carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

Plaintiff Carl Morgan ("Plaintiff") brings a three-count Amended Complaint [DE 26]

against Defendant Enterprise Leasing Company of Florida, LLC, d/b/a Alamo Rent A Car,

("Defendant") for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§ 12182 (counts one and two) and a violation of the Florida Deceptive and Unfair Trade Practices

Act ("FDUTPA"),[1] Florida Statute § 501.204 (count three).

According to the Amended Complaint, Plaintiff is paralyzed from the waist down, cannot

walk and uses a wheelchair for mobility. [Am. Compl. ¶ 5]. He is also a handcycle athlete who

competes in races and marathons across the United States. [Am. Compl. ¶ 9]. During September

---

[1] Plaintiff has mislabeled this count as the "Unfair and Deceptive Claims Practices Act." To avoid confusion and for purpose of consistency, the Court refers to this Act by its correct name.

of 2020, Plaintiff planned to participate in ten races throughout the country. [Am. Compl. ¶¶ 10-11]. To transport his handcycle, Plaintiff requires a vehicle that is either a large sports utility vehicle ("SUV") or a pickup truck. Plaintiff relied on Defendant, a car rental company, to meet his needs. [Am. Compl. ¶¶ 7, 12].

Defendant offers adaptive driving devices ("ADD"), such as accessible hand controls, on certain makes and models that fall within the following vehicle classes: full size, premium, luxury, SUV and pick-up trucks. [Am. Compl. ¶¶ 14-15]. Defendant has a policy of picking up and dropping off all customers at their place of residence, employment or other location, provided the location is within the general trade area of the branch where the vehicle was rented or returned. [Am. Compl. ¶ 17].[2]

On September 10, 2020, Defendant's branch in California confirmed a rental of a pickup truck for Plaintiff when he arrived at the airport in Los Angeles on September 14, 2020. [Am. Compl. ¶ 18]. When Plaintiff arrived in Los Angeles for his marathon, Defendant rented Plaintiff the pickup truck with hand controls for his use during his trip. [Am. Compl. ¶ 19].

On September 10, 2020, Defendant's branch at the Palm Beach International Airport ("PBI") confirmed a rental of a pickup truck for Plaintiff when he arrived at the airport on September 15, 2020. [Am. Compl. ¶ 20]. On September 14, 2020, Plaintiff received an email from a manager at Defendant's PBI branch which stated that Defendant would be unable to place a left-hand control on a full-size pickup truck, and that to use a hand control, Plaintiff would be limited to a full-size car, standard size SUV, or a full-size SUV. [Am. Compl. ¶ 21]. Plaintiff chose a full-size SUV because it was the only other vehicle that would fit his handcycle. [Am. Compl. ¶ 22].

---

[2] The Amended Complaint alleges that Defendant had these policies in place since 2014 due to a settlement with the United States Department of Justice. [Am. Compl. ¶¶ 14-17].

When Plaintiff arrived at the airport on the evening of September 15, 2020, there was no vehicle (SUV or pickup truck) with hand controls waiting for him and Plaintiff was required to take an accessible taxi to his hotel and to take a taxi for all other transportation for his race. [Am. Compl. ¶ 23]. When Defendant advised Plaintiff that the vehicle was finally ready for pick up at the airport, Defendant refused to drop off the vehicle for Plaintiff. [Am. Compl. ¶ 24]. This caused Plaintiff "frustration and difficulty" and denied him service from Defendant. [Am. Compl. ¶ 25].

Plaintiff travels to Florida, and specifically to Palm Beach County, for races on a frequent basis and planned to return for the "Freedom Coast Ride in Palm Beach" on December 5, 2020. In addition, to participate in this litigation, Plaintiff intends to rent a pickup truck so he can bring and use his handcycle when he is subject to deposition and when he attends mediation and trial in this matter. [Am. Compl. ¶ 26.  At such time, he would like to rent a pick-up truck from Defendant, but he will be dissuaded from doing so until Defendant adopts a policy and practice of carrying hand controls for persons with disabilities on pick-up trucks. [Am. Compl. ¶ 27].

By "fail[ing] to maintain in working and useable condition those features required to provide ready access to persons with disabilities," Plaintiff has "suffered and will continue to suffer direct and indirect injuries" and will be "denied the opportunity to participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at [Defendant's] location equal to those afforded to individuals who do not require hand controls." [Am. Compl. ¶¶ 28-29].

According to Plaintiff, the following facts give rise to violations of the ADA: (1) Defendant's failure to ensure that the accessible facilities were available and ready to be used by Plaintiff [Am. Compl. ¶ 39]; (2) Defendant's failure to confirm reservations for vehicles with hand controls [Am. Compl. ¶ 43] and (3) Defendant's failure to pick up and drop off Plaintiff at his hotel [Am. Compl. ¶ 46]. With respect to the FDUTPA claim, Plaintiff alleges the following violation:

"Defendant engaged in deceptive and unfair trade practices . . . by holding itself out as providing vehicles and modifications for persons with disabilities, and then, in violation of applicable discrimination law, denying [Plaintiff] the programs and service of such entity." [Am. Compl. ¶ 51].

Defendant moves to dismiss the FDUTPA claim by asserting that a single deviation from its policy of providing ADD on its rental vehicles cannot rise to a FDUTPA violation, especially given the lack of any facts suggesting that Defendant routinely ignores its policy to provide ADD to drivers with disabilities. Furthermore, Defendant contends that the Amended Complaint does not allege facts to support actual damages under the FDUTPA. Instead, Defendant claims that the facts only demonstrate consequential damages which are not available under the FDUTPA.

Next, Defendant claims that Plaintiff lacks standing to bring the ADA claim seeking a modification of Defendant's policy of not including hand control requests on its reservation confirmations because (1) there is no causal connection between Plaintiff's alleged injury and Defendant's alleged policy of not indicating a hand control request on its reservation confirmations and (2) Plaintiff does not face any imminent injury from Defendant's policy of not indicating a hand control request on reservation confirmations.

Plaintiff responds that, because Defendant filed an answer to the Amended Complaint, the Court should convert the motion to dismiss to a motion for judgment on the pleadings.[3] With respect to the FDUTPA claim, Plaintiff argues that the alleged facts show that Defendant knowingly engaged in an unlawful practice and "that the failure and additional costs as a result of being deprived of transportation, as well as any failure in this trip because he was isolated in his

---

[3] Plaintiff also claims that Defendant did not comply with Local Rules of the Southern District of Florida with respect to page limits. The parties, however, resolved this issue and the Court permitted Defendant to exceed the page limits. [DE 36].

hotel is damages to Mr. Morgan and subject to discovery." [Pl. Resp. at 6]. Plaintiff claims that Defendant's causation argument regarding ADA standing is incorrect because "the injury is the future injury and relief." [Pl. Resp. at 8]. Plaintiff also claims that the denial of his choice of vehicle and the denial of his ability to reserve an accessible vehicle are sufficient injuries to confer standing. Lastly, Plaintiff posits that "[t]he only reason not to provide confirmation of an accessible vehicle is to avoid tracking successful provision of reasonable accommodations." [Pl. Resp. at 11].

In reply, Defendant claims that Plaintiff misstates the legal standard for a motion for judgment on the pleadings. Next, Defendant states that, in making its argument for actual damages, Plaintiff has alleged consequential damages which are not permitted under FDUTPA. Defendant also states that Plaintiff's alleged violation of FDUTPA is conclusory and alleges nothing more than a single isolated failure to provide ADD on a vehicle. Likewise, Defendant asserts that Plaintiff makes conclusory statements to support its assertion of standing.

II. Discussion

The Court begins by first addressing whether it was proper for Defendant to file a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as opposed to a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that a party may move for a judgment on the pleadings once the pleadings are closed. Fed. R. Civ. 12(c). The parties do not dispute that that Defendant contemporaneously filed its Answer [DE 32] with the pending motion to dismiss [DE 33]. Thus, the appropriate mechanism to address Defendant's legal arguments is pursuant to Rule 12(c), not Rule 12(b)(6).

That stated, "[t]he ultimate question on a motion for judgment on the pleadings under Rule 12(c) is the same as on a motion to dismiss under Rule 12(b)(6)—whether the complaint states a claim for relief." *Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 757 (11th Cir. 2021)

(citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)).  "Under Rule 12(c), the district court generally must accept as true the allegations in the pleadings of the non-moving party and draw all reasonable inferences in that party's favor." *Reproductive Health Servs. v. Strange*, 3 F.4th 1240, 1258 (11th Cir. 2021). If it is clear, upon reviewing the pleadings, that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint. *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Florida Statute § 501.204(1). To state a claim under the FDUTPA, a plaintiff must allege three elements: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)).

"An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). A deceptive act occurs when there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000). FDUTPA may apply to a single unfair or deceptive act, "even if it involves only a single party, a single transaction, or a single contract." *PNR*, 842 So. 2d at 777.  Thus, the question before the Court is whether Plaintiff pled conduct that is "unfair or deceptive as judged by controlling case law." *Id.* at 777 n.2.

The Court cannot make this determination at this time. The FDUTPA claim is pled inartfully and therefore must be repled. The FDUTPA claim states, in a conclusory fashion, that Defendant engages in the deceptive and unfair practice of "holding itself out as providing vehicles and modifications for persons with disabilities, and then, in violation of applicable discrimination law, denying [Plaintiff] the programs and service of such entity." [Am. Compl. ¶ 51]. In responding to the motion, however, Plaintiff states that the Amended Complaint alleges that Defendant has reneged on various practices it agreed to in a prior settlement with the United States Department of Justice. [Resp. at 5]. Those practices include denying ADD on several classes of vehicles, no longer having an "8-hour policy" (which is inadequately explained in the Amended Complaint) and failing to pick up and drop off customers with a disability. *Id.* The Amended Complaint, however, simply highlights aspects of the prior settlement, but does not explain how this settlement interplays with the FDUTPA claim. [Am. Comp. ¶ ¶ 14-17]. Nor does the Amended Complaint allege that the failure to comply with the prior settlement rises to the level of a FDUTPA violation. For these reasons, the Court will allow Plaintiff to replead this claim to address these pleading deficiencies.

Next, the Court will address Defendant's argument that the FDUTPA claim does not allege any recoverable actual damages. The Amended Complaint alleges "actual damages, including, but not limited to monetary damages, humiliation, mental anguish, emotional distress, embarrassment, shame, worry and frustration." ]Am. Compl. ¶ 52].

"[A]ctual damages" have been defined as "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984) (quoting *Raye v. Fred Oakley Motors Inc.*,

646 S.W.2d 288, 290 (Tex. Ct. App. 1983)); *see Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314-15 (Fla. Dist. Ct. App. 1998) (same). Moreover, under FDUTPA, "the term 'actual damages' does not include special or consequential damages." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010); *see Rollins*, 951 So. 2d at 869 ("under FDUTPA, 'actual damages' do not include consequential damages"); *Smith v. 2001 South Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004) ("Actual damages, as pertaining to FDUTPA, does not include actual consequential damages.") (internal quotation marks omitted). Nor does FDUTPA permit a claim for personal injury. Florida Statute ¶ 501.212(3); *see City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (citing *Rollins*, 951 So.2d at 873) ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.").

Thus, the Court must dismiss Plaintiff's request for monetary damages stemming from his alleged "humiliation, mental anguish, emotional distress, embarrassment, shame, worry and frustration" [Am. Compl. ¶ 52] because these are personal damages not cognizable under the statute. Likewise, monetary damages for the amount Plaintiff needed to pay for alternative transportation [Am. Compl. ¶ 23] amounts to consequential damages, not actual damages. *See Corgnati*, 715 So.2d at 315 (where plaintiff alleged violation of FDUTPA in the purchase of his car, consequential damages in the form of car loan payments were not recoverable); *see also Black's Law Dictionary* (11th ed. 2019) (consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act."); *cf. Keystone Airpark Auth. v. Pipeline Contractors, Inc.*, 266 So. 3d 1219, 1222–23 (Fla. Dist. Ct. App. 2019) (noting that in a breach of contract action, "consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the

non-breaching party in its dealings, *often with third parties*, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.") (internal quotation marks omitted) (emphasis added).

By failing to state a recoverable loss under FDUTPA, the Amended Complaint fails to state a claim of action under FDUTPA. *Rodriguez*, 38 So. 3d at 180 (Fla. Dist. Ct. App. 2010) ("when a plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA"). The Court will permit Plaintiff the opportunity to amend the Complaint to plead actual damages, assuming he can do so in good faith and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

Next, Defendant contends that Plaintiff lacks standing to require Defendant to include hand control requests on reservation confirmations. Specifically, Defendant seeks to dismiss "the portion of the ADA claim that relates to his complaint that Alamo does not mention requests for hand controls on its reservation confirmations because he has no standing to seek this injunctive relief." [Mot. at 2].[4] Defendant states that the failure to confirm the request for hand controls on the rental car reservation is unrelated to Plaintiff receiving a vehicle without hand controls. According to Defendant, the alleged facts demonstrate that both Plaintiff and Defendant knew that Plaintiff requested hand controls. *Id.* Furthermore, Defendant contends that "Plaintiff faces no imminent harm from [the] current practice of not including such a confirmation," has not suffered an injury by this practice and there are no facts to suggest that Plaintiff will be injured by this practice in the future. *Id.*

Standing requires (1) a "concrete and particularized" injury which is "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct

---

[4] This page number refers to the motion's page number, and not the page number assigned to the motion by CM/ECF.

complained of"; and (3) that the injury is "likely" to "be redressed by a favorable decision." *Georgia Elec. Life Safety & Sys. Ass'n, Inc. v. City of Sandy Springs, Georgia*, 965 F.3d 1270, 1279 (11th Cir. 2020).

The focus of Defendant's standing argument relates to the second element; i.e., whether there is causation between Plaintiff not receiving a rental car with ADD and Defendant not including the request for ADD in the reservation confirmation. At this early stage in the proceedings, and without the benefit of a factual record, the Court cannot determine whether causation for purposes of standing exists. "Standing is a mixed question of fact and law." *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 607 (11th Cir. 1985). Moreover, if a defendant moves to dismiss a complaint for lack of standing, a court must accept as true all of the plaintiff's material allegations. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 879 (11th Cir. 2000). Causation in the standing context is a question of fact unrelated to an action's propriety as a matter of law. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1353 (11th Cir. 2005). To establish causation, a plaintiff need only demonstrate, as a matter of fact, "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* Therefore, the Court denies without prejudice Defendant's motion to dismiss based on lack of standing. Defendant may, however, reassert this argument after the development of an appropriate factual record.

III. <u>Conclusion</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Partial Motion to Dismiss the Amended Complaint [DE 33] is **GRANTED IN PART WITH RESPECT TO THE FDUTPA CLAIM AND DENIED IN PART WITHOUT PREJUDICE WITH RESPECT TO STANDING**. Plaintiff is given leave to amend the FDUTPA claim consistent with

this Order. Plaintiff shall file the amended complaint **within 15 days of the date of entry of this Order.**

  **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of October, 2021.


                   WILLIAM MATTHEWMAN
                   United States Magistrate Judge